

U.S. Department of Justice

Channing D. Phillips
Acting United States Attorney

*District of Columbia*

---

*Judiciary Center*
*555 Fourth St., N.W.*
*Washington, D.C. 20530*

July 8, 2021

<u>By ECF</u>

The Honorable Timothy J. Kelly
United States District Court
District of Columbia
333 Constitution Avenue N.W.
Washington D.C. 20001

      Re:    <u>United States v. Arthur Jackman et al.</u>
              <u>Criminal Docket 21-378 (S-1) (TJK)</u>

Dear Judge Kelly:

      The government submits this letter to provide the Court with an update on the status of discovery in the above-captioned matter. The government will produce discovery in this matter in two phases: (1) preliminary discovery, where counsel will receive an informal production of items most relevant to each defendant from the undersigned Assistant United States Attorneys; and (2) formal discovery, where counsel will receive the same discovery, Bates-stamped and produced by the discovery team, as well as access to a database of materials relevant to the cases arising from the riot on January 6, 2021 at the United States Capitol.

**Preliminary Discovery Status**

      The preliminary discovery productions are substantially complete, and the government intends to produce the remainder of preliminary discovery to the defendants shortly. To date, the preliminary discovery consists of, among other things, (1) closed circuit video ("CCTV") from the U.S. Capitol Police; (2) telephone records; (3) travel records; (4) witness or tipster interview records; (5) location data; and (6) results of searches of the defendants' residences, certain accounts and devices.

**Formal Discovery Status**

      As the Court is no doubt aware, the investigation and prosecution of the Capitol Breach

will be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence.

In the six months since the Capitol was breached, over 500 individuals located throughout the nation have been charged with a multitude of criminal offenses, including but not limited to, conspiracy, tampering with documents or proceedings, destruction and theft of government property, obstruction of law enforcement during civil disorder, assaults on law enforcement, obstruction of an official proceeding, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, and trespass.

The government has accumulated voluminous materials that may contain discoverable information. An illustrative list of materials accumulated by the government, much of which many contain discoverable information relevant to many subjects, includes: (1) CCTV from in and around the Capitol; (2) footage from Cable-Satellite Public Affairs Network ("C-SPAN") and other members of the press; (3) thousands of hours of body worn camera footage from law enforcement; (4) hundreds of thousands of tips; (5) location history data for devices present inside the Capitol; (6) telephone records; (7) a collection of over one million Parler posts, replies and related data; (8) a collection of over one million Paler videos and images; (9) search results of thousands of digital devices and Stored Communication Act accounts; and (10) responses to over 6,000 grand jury subpoenas, seeking documents such as financial records, telephone records, electronic communications service provider records and travel records.

In addition to the materials collected, tens of thousands of documents have been generated in furtherance of the investigation, to include interviews of subjects, witnesses, tipsters and officers; investigations into allegations concerning officer conduct on January 6; source reports; evidence collection reports; evidence analysis reports; chain-of-custody documents; consent forms, and search warrants; and memoranda of investigative steps taken to evaluate leads or further investigations.

This crime involves thousands of individuals inside and outside the Capitol, many of whom overwhelmed and assaulted police. ("According to a Washington Post analysis of the events, and the mob on the west side eventually grew to at least 9,400 people, outnumbering officers by more than 58 to one.") *See* [*https://www.washingtonpost.com/investigations/interactive/2021/dc-police-records-capitol-riot/?itid=sf_visual-forensics*](https://www.washingtonpost.com/investigations/interactive/2021/dc-police-records-capitol-riot/?itid=sf_visual-forensics). Because these crimes happened in generally the same place and at the same time, the resulting criminal cases are related by common facts. No person charged would have been able to commit the crimes alleged but for the actions of the crowd, and every single person charged, at the very least, contributed to the inability of Congress to carry out the certification of our Presidential election. Accordingly, overlapping and interlocking discovery obligations exist. Many persons charged may be captured in material that is not immediately obvious and that requires both software tools and manual work to identify, such as video and photos captured in the devices and SCA accounts of other subjects. Accordingly, the defense is generally entitled to review all video or photos of the breach whether from CCV, BWC or searches of devices and SCA accounts.

Following the Capitol Breach, the United States recognized that due to the nature and volume of materials being collected, the government would require the use of an outside contractor who could provide litigation technology support services to include highly technical and specialized data and document processing and review capabilities.

On or about May 28, 2021, the government contracted Deloitte Financial Advisory Services, LLP, a litigation support vendor with extensive experience providing complex litigation technology services, to assist in document processing, review and production of materials related to the Capitol Breach. The government has begun transferring a large volume of materials to Deloitte (as of July 7, 2021, over 200 disks of data and 34,000 Capitol Police records), who is populating the database. Specific processing workflows and oversight are being established between the government's discovery team and Deloitte and we have already coordinated with Deloitte to use various tools to identify standard categories of Personal Identifying Information ("PII") and to redact them.

The government anticipates that the database will be accessible shortly. Once it is, the government will begin systematically reviewing materials for potentially discoverable information, tagging when possible (e.g., video by a location or type of conduct, tips by a type of allegation), and redacting when necessary. The government is also developing and implementing processes and procedures for ensuring that voluminous materials have been and will continue to be systematically reviewed for information that, *inter alia,* may be material to the defense. For example, the government will seek to ensure that that all known identifiers of any charged defendant are compared against tips, Parler data, location data and that all visual media, the collection of which grows on a regular basis, are regularly searched against known images of charged defendants.

The government's discovery team regularly meets with the Federal Public Defender ("FPD") leadership and technical experts with respect to discovery issues. Given the volume of information that may be discoverable, FPD is carefully examining options for accepting materials. We understand that FPD is considering contracting with a vendor to establish databases that can be used to receive and perform technical searches upon discoverable materials. The government's discovery team is in the process of identifying the scope and size of materials that may be turned over to FPD with as much detail as possible, so that FPD can obtain accurate quotes from potential database vendors. It is hoped that this database will be used by FPD offices nationwide that are working on Capitol Breach cases and counsel that are appointed under the Criminal Justice Act. We believe that a database will be the most organized and economical way of ensuring that all counsel can obtain access to, and conduct meaningful searches upon, relevant voluminous materials, e.g., thousands of hours of body worn camera and Capitol CCTV footage, and tens of thousands of documents, including the results of thousands of searches of Stored Communications Act accounts and devices.

In summary, the government is working to provide an unprecedented amount of materials in the most comprehensive and usable format to defense counsel. Although the government is

acting with speed and diligence, the government needs time to carry out our discovery obligations in a careful and complete manner, and the defense needs a way to receive and review the materials.

                                    Respectfully submitted,

                                    Nadia Moore
                                    William Dreher
                                    Assistant United States Attorneys

Enclosure(s)